J-A15021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN BLANDING | : | |
| | : | |
| Appellant | : | No. 1751 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 20, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002507-2023

BEFORE: KUNSELMAN, J., LANE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED: AUGUST 6, 2026**

Kevin Blanding ("Blanding") appeals from the judgment of sentence imposed following his convictions for persons not to possess firearms, carrying a firearm without a license, possession with intent to distribute a controlled substance ("PWID"), possession of a small amount of marijuana, and possession of drug paraphernalia.[1] We affirm.

We summarize the relevant factual and procedural history in this matter as follows. On April 3, 2023, Harrisburg Police Sergeant Tyron Meik ("Sergeant Meik"), Corporal Jeremy Crist ("Corporal Crist"), and State Parole Agent Clint Caprio ("Parole Agent Caprio") were working together as members of the Street Crimes Unit on the 1600 block of Chestnut Street, a high crime

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A §§ 6105, 6106; 35 Pa.C.S.A §§ 780-113(a)(30), (31)(i), (32).

area known for frequent shootings and drug sales. Corporal Crist observed Blanding, wearing a sling bag across the front of his body, and Azar Hughes ("Hughes"), a known violent gang member, enter a vehicle parked in front of 3 North 16th Street, a partially abandoned building notorious for drug trafficking and criminal activity. Blanding and Hughes sat in the parked vehicle for several minutes before Hughes, the driver, quickly pulled away from the curb. The police officers initiated a traffic stop, and when they approached the vehicle, they noticed a strong odor of marijuana. Both Hughes and Blanding admitted that they did not possess medical marijuana cards. Parole Agent Caprio observed that Blanding "only put [his] window down very slightly" and appeared "very nervous throughout the entire interaction," "shaking" and repeatedly "patting at his right pocket." N.T., 2/19/25, at 50, 53. Blanding initially told the officers that he did not have any identification with him, and instead provided his name and date of birth. Using this information, Parole Agent Caprio discovered Blanding was under the supervision of state parole for a PWID conviction.

While speaking with the officers, Blanding continued to manipulate his right pocket and eventually retrieved his driver's license. As he did so, Sergeant Meik observed a plastic sandwich bag partially come out of his pocket, but then Blanding pushed it back in and kept his hand there. The officers also noticed that Blanding had concealed his sling bag underneath his shirt, which they considered suspicious because law enforcement officers refer to these sling bags as "felony fannies," as "a high percentage of them that

- 2 -

[the police] come in contact with [contain] drugs, guns, cash . . . your drug dealer to-go kit." *Id*. at 19. When Corporal Crist asked Blanding and Hughes to step out of the vehicle for officer safety, Parole Agent Caprio observed that Blanding "was very resistant or hesitant to get out of the vehicle." *Id*. at 51-52. Parole Agent Caprio conducted a pat down and when he touched Blanding's right front pocket, "the pocket opened and [he] could see clearly that it was a bag of marijuana." *Id*. at 52. After placing Blanding under arrest, the police officers conducted a full search incident to his arrest and recovered a loaded firearm, crack cocaine, and small denominations of cash from Blanding's sling bag. The Commonwealth thereafter charged Blanding with the above-listed offenses.

Blanding filed a motion to suppress and the trial court held a suppression hearing. The Commonwealth presented testimony from the three law enforcement officers involved in the vehicle stop and arrest, who testified in accordance with the above summary. At the conclusion of the hearing, the trial court denied Blanding's motion to suppress.

On May 6, 2025, the matter proceeded to a bench trial, at the conclusion of which the court found Blanding guilty of all charges. On November 20, 2025, the court imposed a sentence of seven and one-half to fifteen years' incarceration for persons not to possess firearms, three and one-half to seven years' incarceration for carrying a firearm without a license, and three to six years' incarceration for PWID, to run concurrently with one another. The court imposed no further penalty on the remaining charges. Blanding did not file

any post-sentence motions. He filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Blanding raises the following issue, with three sub-issues, for our review:

1. Did the [s]uppression [c]ourt err in denying . . . Blanding's motion to suppress by finding that:

   a. [t]here was reasonable suspicion that . . . Blanding was armed and dangerous to warrant a ***Terry***[2] frisk,

   b. [t]he officer searched and retrieved the item in . . . Blanding's pocket pursuant to the plain feel doctrine,

   c. [t]here was reasonable suspicion to warrant a parole search of . . . Blanding?

Blanding's Brief at 4 (sub-issues reordered for ease of review, footnote added).

In each of Blanding's sub-issues, he challenges the trial court's denial of his suppression motion. Our standard of review when addressing a challenge to the denial of a motion to suppress is well-established:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are

---

[2] ***See Terry v. Ohio***, 392 U.S. 1 (1968).

erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McClellan*, 178 A.3d 874, 880-81 (Pa. Super. 2018) (citation omitted). "With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Rosendary*, 313 A.3d 236, 241 (Pa. Super. 2024) (citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Lewis*, 343 A.3d 1016, 1029 (Pa. 2025). Generally, police officers must obtain a warrant based on probable cause before a search or seizure; however, they may conduct a brief "*Terry* frisk" of a person's outer clothing during a lawful investigatory stop if they have reasonable suspicion that the individual is armed and dangerous. *See Interest of T.W.*, 261 A.3d 409, 417 (Pa. 2021) (citations omitted). The "plain feel doctrine" permits police officers to "seize contraband detected during a lawful frisk if the identity of the illegal contraband is 'immediately apparent' upon touching the object." *Id*.

However, a different standard applies to the Fourth Amendment rights afforded to parolees. As this Court has explained:

The aim of probation and parole is to rehabilitate and reintegrate a lawbreaker into society as a law-abiding citizen. The institution of probation and parole assumes a probationer or parolee is more likely than the ordinary citizen to violate the law. ***Consequently, probationers and parolees have limited Fourth Amendment rights because of a diminished expectation of privacy.***

***Rosendary***, 313 A.3d at 241 (citations omitted, emphasis in the original). "Parolees agree to 'endure warrantless searches' based only on reasonable suspicion [as opposed to probable cause] in exchange for their early release from prison." ***Id***. at 247 (citation omitted).

Accordingly, a parole officer may conduct a warrantless personal search of a parolee "if there is a reasonable suspicion to believe that the . . . offender possesses contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S.A. § 6182(d)(1)(i). Reasonable suspicion may be based on, *inter alia*, the parole officer's personal observations, the activities and behaviors of the parolee, the parole officer's experience in similar circumstances, the prior criminal and supervisory history of the parolee, third-party information, and the need to verify compliance with the conditions of supervision. ***See*** 61 Pa.C.S.A. § 6182(d)(4); ***see also Rosendary***, 313 A.3d at 247.

Importantly, "parole officers may base reasonable suspicion of drug possession, in violation of parole requirements, on their first-hand observations," including the odor of marijuana. ***Commonwealth v. Gould***, 187 A.3d 927, 936 (Pa. Super. 2018) (citation omitted). In addition, our

Supreme Court "has long recognized a suspect's presence in a high-crime area as a relevant factor in assessing reasonable suspicion." *Lewis*, 343 A.3d at 1029-30 (citations omitted).

As Blanding's first two sub-issues concern the propriety of Parole Agent Caprio's search of Blanding's person, we will review them together. In his first sub-issue, Blanding argues that "once [he] was out of the car, he [was] immediately detained and patted down to find illegal drugs." Blanding's Brief at 15. He avers that "[t]here was no evidence of him being armed and dangerous; rather, the evidence demonstrated that police thought he had a bag of drugs." *Id*. at 17. He further contends that "[t]he basis of Officer Crist's belief that . . . Blanding was 'armed and dangerous,' was the location, the nervousness, the marijuana[] smell, manipulating the pocket, and previous experience with the fanny packs and his involvement with a known gang member," but that these "generalities" about firearms and fanny packs were "not sufficient to constitute reasonable suspicion." *Id*. at 18.

In his second sub-issue, Blanding argues that Parole Agent Caprio's pat-down of Blanding's pocket "violate[d] the plain-feel doctrine and required suppression because the movement and pushing down of the pocket made the contraband not 'immediately apparent'." *Id*. at 22.

The trial court considered Blanding's first two sub-issues together and found they lacked merit. The court aptly reasoned:

> Corporal Crist, Sergeant Meik, and [Parole Agent] Caprio, while working in a high-crime area, observed Mr. Hughes and

[Blanding] sitting in a parked car in a high crime area. [Blanding] was also seen wearing a satchel on his person. While conducting a traffic stop, where the odor of marijuana was present and [Blanding] acted nervously, failed to initially present [identification], and continuously manipulated his right pocket, it was discovered he was on parole. Based on the totality of the circumstances and reasonable suspicion that criminal activity was afoot and [Blanding] may be armed, [Blanding] was patted down and upon discovery of the marijuana on his person, he was found to be in violation of his supervision. This provided Parole Agent Caprio with reason to conduct a further, complete search of [Blanding] which was reasonably related to his duty as a parole officer and a proper search incident to arrest. This search led to the discovery of the concealed satchel which contained contraband. Here, the agent had reasonable suspicion to search [Blanding] as a parolee. The agent need not have even frisked [Blanding] as he could have conducted a search.

Trial Court Opinion, 2/10/26, at 8-9.[3]

We conclude that the trial court's denial of Blanding's motion to suppress was supported by the record and free from legal error. First, we note that neither police officer present at the scene conducted a ***Terry*** frisk of Blanding's person that would have required reasonable suspicion that he was armed and dangerous or would have been limited by the plain feel doctrine. ***See Interest of T.W.***, 261 A.3d at 417. Instead, Parole Agent Caprio was the only person who patted down Blanding, and this was after determining

---

[3] The trial court further determined that "even if [Blanding] were not on parole, the officers were justified in conducting a ***Terry*** pat down of [Blanding] as they had reasonable suspicion criminal activity was afoot and the officers had reasonable suspicion that [Blanding] may be armed and presented a danger to officer safety. The satchel had been carrying was now hidden and officers had experienced those satchels containing firearms in other incidents." Trial Court Opinion, 2/10/26, at 9.

that Blanding was under state parole supervision for a PWID conviction. We emphasize that because Blanding was on state parole and had a diminished expectation of privacy, Parole Agent Caprio, as a state parole agent, needed only reasonable suspicion that Blanding possessed contraband or was in violation of the conditions of his parole in order to conduct a warrantless search of his person for drugs, firearms, or any other contraband. *See* 61 Pa.C.S.A. § 6182(d)(1)(i); *see also Gould*, 187 A.3d at 935. Therefore, we conclude that, contrary to Blanding's assertions, the requirements for conducting a *Terry* frisk and retrieving drugs under the "plain feel doctrine" were inapplicable to this matter.

Moreover, after careful review of the record, we determine that Parole Agent Caprio had sufficient reasonable suspicion to conduct a warrantless personal search. The record shows Parole Agent Caprio observed Blanding, in a high-crime area, enter a vehicle with a known violent gang member. N.T., 2/19/25, at 18, 54. Blanding was wearing a sling bag, or satchel, referred to as a "felony fanny" among law enforcement because these bags are frequently used to carry drugs and firearms. *Id*. at 19, 53-54. During the traffic stop, Blanding initially stated he did not have any identification but later provided a driver's license. *Id*. at 21, 50. He repeatedly manipulated an object in his right front pocket, appeared nervous with shaking hands, and had concealed the sling bag underneath his shirt. *Id*. at 21-23, 50. Parole Agent Caprio smelled the odor of marijuana emanating from inside the vehicle, and neither

Blanding nor Hughes possessed medical marijuana cards. *Id*. at 20-21, 52.

When Parole Agent Caprio ran Blanding's information through the system, he

discovered that Blanding was under state parole supervision for a PWID

conviction. *Id*. at 50-51. Based on the totality of these circumstances, we

determine Parole Agent Caprio had reasonable suspicion to believe Blanding

was in possession of contraband and/or was in violation of the conditions of

his parole and, therefore, he could conduct a warrantless personal search of

Blanding. *See* 61 Pa.C.S.A. § 6182(d)(4)(providing that reasonable suspicion

may be formed, *inter alia*, by agent observations, activities of the offender,

experience of agents in similar situations, prior criminal history of offender,

and the need to verify compliance with the conditions of supervision); *see*

*also Gould*, 187 A.3d at 936 (holding that reasonable suspicion of drug

possession may be formed by a parole officer smelling the odor of marijuana).

Accordingly, no relief is due on either of Blanding's first two sub-issues.

Next, we must determine whether Blanding has preserved his final sub-

issue for appellate review. This Court has explained that:

> It is well-settled that the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119. Arguments which are not appropriately developed are waived. When issues are not properly raised and developed in briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof. Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived.

- 10 -

*Commonwealth v. Taylor*, 277 A.3d 577, 590-91 (Pa. Super. 2022) (quotation marks and citations omitted).

Although Blanding purports to challenge Parole Agent Caprio's reasonable suspicion to search Blanding as a parolee, nowhere in the argument section of his brief does he even mention this claim. Thus, Blanding has waived any argument on this issue.[4] Accordingly, no relief is due on Blanding's final sub-issue.[5]

For the foregoing reasons, we conclude that Blanding's challenge to the denial of his suppression motion is without merit, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

---

[4] In any event, we have already determined that Parole Agent Caprio had the requisite reasonable suspicion to conduct a warrantless search of Blanding's person based on the parole agent's belief that Blanding was a parolee in possession of contraband and/or was in violation of the conditions of his parole.

[5] In his argument section, Blanding also contends that his parole status was "used as a pretext for officers to act as stalking horses." Blanding's Brief at 23. However, as indicated above, Blanding did not raise this issue in his statement of questions involved. Pursuant to our Rules of Appellate Procedure, this Court may not consider any issue that is not stated in the statement of questions involved or is fairly suggested thereby. *See* Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); *see also Commonwealth v. Fremd*, 860 A.2d 515, 524 (Pa. Super. 2004) (finding waiver where the appellant failed to raise an issue in the Statement of Questions Involved portion of his appellate brief). Thus, as Blanding failed to preserve this unrelated issue for our review, we cannot address it.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/06/2026